UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RHONDA UNDERWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demanded |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| CORECIVIC OF TENNESSEE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Comes Plaintiff Rhonda Underwood, through her counsel, and sues her former employer Defendant CoreCivic of Tennessee, LLC (referenced herein as "CoreCivic") for unlawful employment actions pursuant to Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.* Plaintiff would show the Court as follows:

### I. JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

2. The actions giving rise to this Complaint occurred in Hamilton County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. § 1391.

### II. NATURE OF PROCEEDING

3. This is a proceeding for back pay; emotional damages; reinstatement or front pay in lieu of reinstatement; the value of all employee benefits; pre-judgment interest; attorney fees and costs; punitive damages; and for such additional damages as may be necessary to effectuate the purposes of Title VII and the THRA.

## III. THE PARTIES

4. At all relevant times at issue in this lawsuit, Plaintiff was a resident of Bradley County, Tennessee, and was employed by CoreCivic in Hamilton County, Tennessee.

5. CoreCivic is a Tennessee limited liability company with its principal place of business in Davidson County, Tennessee. CoreCivic is an "employer" within the meaning of, and is subject to, the provisions of Title VII, namely 42 U.S.C. § 2000e(b); and the THRA, namely Tenn. Code Ann. § 4-21-102(5).

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

6. Plaintiff is female.

7. Plaintiff was employed by CoreCivic as a Correctional Officer at the Silverdale Detention Facility ("Silverdale") in Hamilton County, Tennessee, from April 23, 2018, until her forced resignation on or about September 6, 2018.

8. As a Correctional Officer at Silverdale, almost all of Plaintiff's work assignments were in all-male prisoner housing units. Each housing unit was made up of two or more pods. Each pod consisted of approximately 60 male inmates.

9. Normally, only one Correctional Officer was assigned to each pod. Thus, Plaintiff was the sole female among approximately 60 male inmates.

10. As a Correctional Officer, Plaintiff's only tools for protection were pepper spray, a set of handcuffs, and a hand radio.

11. According to policy at Silverdale, if a Correctional Officer calls "Code Red" over the radio, a response team is supposed to promptly come to the officer's aid. "Code Red" means an officer is in danger from an inmate. No "Code Red" call should ever be ignored.

12. According to policy at Silverdale, a Correctional Officer shall complete a Disciplinary Report ("DR") when an inmate commits a major offense. Among CoreCivic's list of inmate major offenses were explicit sexual talk, exposing genitalia, and inappropriate sexual touching. Punishment for major offenses normally resulted in the inmate being removed from the general population and being placed in the "segregation" unit. The length of time that an inmate spends in segregation is decided by a committee comprised of members of management. The maximum period for inmate segregation is three months.

13. During her employment with CoreCivic, Plaintiff was subjected to unwelcomed, severe, and pervasive sexual harassment and assault from the male inmates. Despite Plaintiff's repeated complaints and requests for assistance, management ignored her complaints, failed to take prompt remedial action toward the harassing inmates, and failed to provide a safe workplace free from severe sexual harassment and sexual assault by the male inmates.

14. For example, in early June 2018, several male inmates began aggressively and graphicly talking about how they wanted to have sex with Plaintiff. Two of the inmates grabbed Plaintiff on the buttocks and refused to back away despite her repeated commands. Plaintiff, who was the sole Corrections Officer in the unit, called "Code Red" on the radio, but no one responded. Eventually, some of the other inmates were able to diffuse the sexually aggressive inmates. Plaintiff wrote DRs on the two inmates who sexually assaulted her and submitted the DRs to Captain Coulter. The two inmates received three weeks in segregation.

15. On another occasion in June 2018, several male inmates repeatedly were making explicit sexual remarks toward Plaintiff. They were discussing how they wanted to have sex with Plaintiff in very graphic and violent ways. The inmates refused Plaintiff's instructions to go into their cells and were becoming unruly. Plaintiff, who was the sole Corrections Officer in the pod,

repeatedly called individual Corrections Officers on her radio for assistance. No one responded. Finally, Plaintiff called "Code Red." Captain Coulter eventually responded. While Captain Coulter was present, the inmates' sexually explicit talk continued. Plaintiff asked Captain Coulter what could be done about the sexual harassment. Captain Coulter responded, "Grow a tougher skin. I can't sit in here and hold your hand."

16. In early August 2018, several male inmates became very graphic and violent as they spewed sexually explicit language toward Plaintiff. They began to expose their genitalia. One particular inmate nicknamed "Primo" was particularly aggressive toward Plaintiff. Primo told Plaintiff, "I'm going to put my dick in your mouth so far that it will come out your ass." He was very close to Plaintiff when he made that comment. Primo is over six feet tall, while Plaintiff is approximately five feet tall.

17. After Primo made the sexually violent comment, several other inmates began agitating him to demonstrate what he had just described. Plaintiff, who was again the sole Corrections Officer in the pod, tried to leave the pod, but she could not because she did not have a key to the locked door. Plaintiff desperately called on the radio for central control to unlock the door, but no one responded. After repeated calls, central control finally unlocked the door and Plaintiff was able to escape.

18. Plaintiff found Counselor Martin in another section of the housing unit, and while crying, explained to Counselor Martin what had happened. In Plaintiff's presence, Counselor Martin called Captain Coulter on the radio and asked if a DR could be written on Primo. Captain Coulter refused because it was almost time for her shift to end. Later that day, Plaintiff wrote a DR on Primo and submitted it to Counselor Martin. Nothing ever happened to Primo.

19. On September 1, 2018, Plaintiff was again alone to supervise an all-male pod. The male inmates had been exposing their genitalia for most of the shift. Frustrated, Plaintiff called Captain Rankin on the radio for assistance. When Captain Rankin arrived, she told Plaintiff to just ignore the inmates' sexual behavior.

20. After Captain Rankin left, an inmate named "Holland" grabbed Plaintiff and pulled her into his private cell. Plaintiff tried to break free, but physically could not. He began kissing Plaintiff, putting his hands on her breasts, and down her pants. He told Plaintiff that the cameras did not reach this part of his cell. Plaintiff initially broke free of his grasp, but he pulled her back into his cell. After a struggle, Plaintiff somehow managed to escape.

21. Plaintiff called Code Red on the radio. No one responded. Eventually, as a last resort, Plaintiff left the pod using the emergency key (because this pod was not managed from the central control room due to unmaintained or broken wiring) and found Counselor Moody. Plaintiff wrote a DR on Holland and submitted it to Captain Coulter.

22. On September 4, 2018, inmate Holland cornered Plaintiff and demanded to know if she had accused him of attempted rape. Later that day, several inmates warned Plaintiff to stay away from inmate Holland for her own safety.

23. That same day, Captain Dove asked Plaintiff to write a complaint report (Form 51-C) on Captain Rankin for dereliction of duty regarding Plaintiff's sexual assault by inmate Holland. Plaintiff was also asked to write up another DR on inmate Holland because the original DR had been lost. Plaintiff wrote the Form 51-C on Captain Rankin, but did not re-write the DR on inmate Holland because Plaintiff was too scared.

24. By August 2018, Plaintiff had realized that management tolerated sexual harassment from the male inmates. Plaintiff also realized that Silverdale was a dangerous

5

environment because management did not provide support or assistance when requested, in violation of CoreCivic's policies and procedures.

25. Plaintiff had repeatedly complained to her direct supervisors about the lack of support and assistance. Plaintiff also complained to Denise Myers, who was the on-site Human Resources officer. When Plaintiff complained to HR about the inmate sexual harassment, Ms. Myers merely laughed and said, "Boys will be boys."

26. Scared for her own safety and frustrated with management's lack of cooperation, Plaintiff submitted a two-week notice in late August 2018. During the two-week notice period, members of management urged Plaintiff to continue her employment. Plaintiff gave their suggestions serious consideration until the September 1st sexual assault. The September 1st sexual assault by inmate Holland and lack of remedial response further demonstrated to Plaintiff that her personal safety was in danger by continuing to work at Silverdale.

27. By early September, Plaintiff reasonably felt compelled to resign. Nothing had been done concerning inmate Holland. The DR that she wrote on him was "lost" by management. Her repeated requests for backup to save her from being raped were ignored, and nobody responded in a meaningful way to her complaints other than to say "boys will be boys" or to "grow a tougher skin." Plaintiff could not return to work and put her personal safety at risk again. Although she conveyed her complaints to management, there was no meaningful response, and Plaintiff was constructively discharged.

28. Plaintiff's last day of work at Silverdale was September 4, 2018. Plaintiff called in sick on September 5 and then informed her supervisor on September 6 that she would not be returning to work because she was scared.

29. Since September 2018, Plaintiff has had recurring nightmares of the sexual harassment and assault that she experienced while employed by CoreCivic.

30. Plaintiff has been diagnosed with PTSD as a result of the sexual harassment and assault that she experienced while employed by CoreCivic.

## V. ADMINISTRATIVE EXHAUSTION

31. On October 16, 2018, Plaintiff filed a Charge of Discrimination with the EEOC, which was assigned Charge Number 494-2019-00123. On November 30, 2018, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff brings this action within 90 days of the Notice of Right to Sue.

## VI. PLAINTIFF'S CLAIMS

Count I: Sexually Hostile Work Environment

32. Plaintiff experienced a hostile work environment on the basis of her sex caused by male inmates in violation of 42 U.S.C. § 2000e-2(a)(1) and Tenn. Code Ann. § 4-21-401(a)(1).

33. The male inmates' unwelcomed sexually harassing behavior directed towards Plaintiff was sufficiently severe or pervasive to alter the work conditions of Plaintiff's employment and created an abusive working environment where working conditions were so intolerable that a reasonable person would have felt compelled to resign.

34. CoreCivic is liable for the sexually hostile work environment experienced by Plaintiff because CoreCivic, while repeatedly having been made aware of the sexual harassment, failed to take appropriate steps to remedy or prevent illegal inmate behavior toward Plaintiff.

Count II: Constructive Discharge – Sexual Harassment

35. As a result of the sexually hostile work environment, and CoreCivic's refusal to take prompt remedial action, but rather ignore Plaintiff's repeated requests for assistance, Plaintiff

suffered a constructive discharge inasmuch as CoreCivic's tolerance of the hostile work environment was so severe that a reasonable person in Plaintiff's place would feel compelled to resign.

36. The male inmates' harassing behavior directed towards Plaintiff was sufficiently severe or pervasive to alter the work conditions of Plaintiff's employment and created an abusive working environment where working conditions were so intolerable that a reasonable person would have felt compelled to resign. Plaintiff's constructive discharge was a reasonably foreseeable response to Defendant's refusal to take prompt remedial action to prevent the continued harassment. Defendant deliberately created Plaintiff's intolerable working conditions by choosing to ignore Plaintiff's numerous complaints to her supervisors of the inmates' frequent harassment.

37. Plaintiff's constructive discharge violated 42 U.S.C. § 2000e-2(a)(1) and Tenn. Code Ann. § 4-21-401(a)(1).

## VII. DAMAGES

38. As a result of Defendant's wrongful actions, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff lost and will continue to lose salary, opportunities and advancement, and various employee benefits, which she would have earned had she been allowed to continue in her employment with Defendant. In addition, Plaintiff has suffered great mental anguish and emotional distress, which she experienced because of Defendant's wrongful actions.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

8

Case 1:19-cv-00006-JRG-SKL   Document 1   Filed 01/09/19   Page 8 of 9   PageID #: 8

b. That Plaintiff be awarded back pay and all lost benefits of employment;

c. That Plaintiff be awarded damages for emotional distress, grief, and anguish;

d. That the Court issue an injunction requiring Defendants to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal condition imposed on her job; or, in the alternative, front pay and benefits in lieu of reinstatement;

e. That Plaintiff be awarded punitive damages;

f. That Plaintiff be awarded pre-judgment interest;

g. That Plaintiff be awarded attorney fees and costs, and such other and further relief as the Court deems proper; and

h. That a jury try all claims and issues triable by a jury.

**BURNETTE, DOBSON & PINCHAK**

By: *s/ Doug S. Hamill*
Doug S. Hamill, BPR No. 22825
Donna J. Mikel, BPR No. 20777
Attorneys for Plaintiff
711 Cherry Street
Chattanooga, Tennessee 37402
(423) 266-2121
dhamill@bdplawfirm.com
dmikel@bdplawfirm.com